UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON M. HART, | |
| Plaintiff, | CASE NO. 2:21-cv-00014-RSM-BAT |
| v. | **REPORT AND RECOMMENDATION** |
| ROBIN SMITH, et al., | |
| Defendant. | |

Plaintiff proceeds pro se in this 42 U.S.C. §1983 civil rights action. He alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment as well as medical malpractice, and names as defendants the Department of Corrections and Robin Smith, a Physician's Assistant at Monroe Correctional Complex (MCC). Dkt. 4.

Plaintiff has filed a "Motion for Injunctive Relief" (Dkt. 8), a "Writ of Mandamus (Motion for Emergency Medical Care)" (Dkt. 9) and a "Motion for Emergency Medical Care/Writ of Mandamus" (Dkt. 14). The Court construes these filings as motions for preliminary injunctive relief.[1] Defendants oppose the motions. Dkts. 10, 18. For the reasons below, the Court recommends plaintiff's motions for preliminary injunction (Dkts. 8, 9, 14) be DENIED.

---

[1] The Court notes that pursuant to 28 U.S.C. § 1361: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee *of the United States or any agency thereof* to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). Federal courts do not have jurisdiction or authority under the statute to issue mandamus to direct non-federal

**BACKGROUND**

Plaintiff's complaint appears to allege that in May 2019, Lamin Sennah, (a medical provider who plaintiff does not name as a defendant) prescribed him "unnecessary medications" – specifically "Thiothizene"' and "Abilify" which led to change of thoughts and suicidal behaviors. Dkt. 4. Plaintiff claims this caused him to self-harm by punching the left side of his head and slapping his face "100s" or "1000s" of times "rendering jaw left side hinge out of place and step off fracture same time in May 2019 … led to brain damage, significant drop, plummet of cognitive cognition." *Id.* He indicates he received a "CT scan w/out contrast, after 6-11-19 x-rays of skull revealed blood pockets, L side of head, 6-23-19 CT revealed blood on skull" and no further treatment was administered. *Id.*

He alleges that since June 23, 2019 he has been in severe pain and experienced "tactile hallucinations." *Id.* He alleges physicians assistant Robin Smith "has been letting me DIE by blood on the brain" and the failure to obtain a CT scan with contrast demonstrates deliberate indifference. *Id.*

Plaintiff alleges that he was losing use of speech and cognition and required Snohomish County Superior Court to force DOC into medical treatment. *Id.* He alleges DOC, defendant Smith and non-defendant Calvin Cogburn tampered with and destroyed evidence and withheld medical records. *Id.* He alleges he is dying of "organic brain disorder from T.B.I.s exacerbated by antipsychotic and prohibited medication." *Id.* He alleges he has "T.B.I. induced hallucinations

---

entities, such as the state actors here, in the performance of their duties. *See Clark v. State of Washington*, 366 F.2d 678, 681 (9th Cir. 1966) ("The federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties[.]"); *Fox v. City of Pasadena*, 78 F.2d 948 (9th Cir. 1935) (federal district court without jurisdiction to issue writ of mandamus to compel city officers to perform duties under state law and city charter); *Davis v. Pagan*, 1996 WL 281581, *1 (N.D. Cal. 1996) ("Federal mandamus may not be used to compel a non-federal actor [...] to perform a duty.").

[…] speech, auditor, tactile" and that his motor skills and executive functioning has been affected. *Id.* He alleges he has received no treatment besides "propanalol." *Id.* As relief he seeks $9,125,000.00 in damages, the removal of PA Robin Smith's license to practice medicine, CT and MRI machines ordered for MCC DOC. *Id.*

On February 23, 2021, petitioner filed a "Motion for Injunctive Relief" (Dkt. 8), along with a document titled "Writ of Mandamus (Motion for Emergency Medical Care)" (Dkt. 9). In his "Motion for Injunctive Relief" (Dkt. 8) petitioner alludes to "potentially deadly anti-psychotic order rapid deterioration/decompensation conflicting diagnosis." Dkt. 8. He alleges the "attached pages" reflect dementia, heart murmur, skull bleeding, dislocated jaw, step off fracture and asks the Court to "plz stop them." *Id.* In the document titled "Writ of Mandamus (Motion for Emergency Medical Care)" (Dkt. 9) petitioner states "step off fracture, blood, C-2, Degnerative Disc, X-ray 2019 and 2020 comparison, M.R.I, Magnetic Resonance Imaging, CT Scan with contrast, Left jaw dislocated vs. break – unhinged, knocked out of socket."

On March 17, 2021, petitioner filed a "Motion for Emergency Medical Care/Writ of Mandamus" in which he alleges "medication induced violent self-harm psychosis over 21 months ago[.]" Dkt. 14. He appears to allege medication caused him to punch and hit himself and he had or has "broken nose", "compressed and disintegrated discs in neck nearly C-2 @ base of neck", "fracture of left temporal lobe", "tactile hallucinations", "step off fracture", "bleed internally", "blood pockets", "now visual hallucinations indicative of me dying of dementia", "use of speech wayning [sic].[]" *Id.* He requests an "emergency CT with contrast and MRI." *Id.* On April 13, 2021, and April 21, 2021, petitioner filed "supplemental evidence" which appears primarily to consist of medical records and grievances. Dkts. 22, 25. On April 20, 2021, petitioner filed a document entitled "Correction: Injunctive Relief with Supplemental Evidence

for Emergency Medical Treatment in 'Writ of Mandamus'" in which he appears to reiterate his request for an MRI and CT scan with contrast and attaches what appear to be some additional medical records. Dkt. 23.

Respondent opposes petitioner's motions, arguing he has failed to demonstrate he is entitled to preliminary injunctive relief. Dkts. 12, 18.

DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"),

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect . . . principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2).

To obtain preliminary injunctive relief, plaintiff must demonstrate: (1) the likelihood of success on the merits; (2) the likelihood of suffering irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the alternative, "'if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoted sources omitted).

The purpose of preliminary injunctive relief is to preserve the positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is, however, "an extraordinary and drastic remedy, one that should not be

1   granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v.*

2   *Armstrong*, 520 U.S. 968, 972 (1997) (quoted source omitted; emphasis added by Supreme

3   Court); *See also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy

4   never awarded as of right.").

5          In this case, in his "Motion for Injunctive Relief" (Dkt. 8), along with a document titled

6   "Writ of Mandamus (Motion for Emergency Medical Care)" (Dkt. 9) petitioner appears to take

7   issue with some of the antipsychotic medications he has been prescribed as well as medical

8   treatment related to a head and/or jaw injury he sustained in May or June of 2019. However, the

9   only request for relief the Court can discern is a request to "plz stop them." In his "Motion for

10  Emergency Medical Care/Writ of Mandamus" (Dkt. 14) plaintiff appears to request that he be

11  given a CT scan with contrast and an MRI of his head or jaw related to a head injury he sustained

12  in May or June of 2019.

13         A prison official may be deemed to have been deliberately indifferent to an inmate's

14  serious medical needs "when they deny, delay, or intentionally interfere with medical treatment."

15  *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quoted sources and quotation marks

16  omitted). The Court considers both the seriousness of the medical need and the nature of the

17  response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on*

18  *other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). A "'serious'

19  medical need exists if the failure to treat a . . . condition could result in further significant injury

20  or the 'unnecessary and wanton infliction of pain'." *Id.* (quoting *Estelle*, 429 U.S. at 104). A

21  "defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical

22  need in order for deliberate indifference to be established." *Id.* at 1060. The defendant "must not

23  only 'be aware of facts from which the inference could be drawn that a substantial risk of serious

1    harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051,

2    1057 (9th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The indifference to

3    medical needs must be substantial; a constitutional violation is not established by negligence or

4    "an inadvertent failure to provide adequate medical care[.]" *Estelle*, 429 U.S. at 105-06

5    ("Medical malpractice does not become a constitutional violation merely because the victim is a

6    prisoner."); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Nor does a difference of

7    opinion between an inmate and medical authorities regarding proper medical treatment give rise

8    to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

9    An inmate must show the course of treatment chosen "'was medically unacceptable under the

10   circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk

11   to plaintiff's health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332

12   (9th Cir. 1986)). Mere delay of treatment, standing alone, does not suffice to state a claim of

13   deliberate indifference; the inmate must show the delay led to further injury. *Shapley v. Nevada*

14   *Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (1985) (citing *Estelle*, 429 U.S. at 106); *accord*

15   *Hallett*, 296 F.3d at 745-46; *McGuckin*, 974 F.2d at 1059-60.

16        Viewing petitioner's motions in conjunction with his complaint, it is apparent petitioner

17   disagrees with some of the medical treatment he has received related to prescription of

18   antipsychotic medication and treatment of a 2019 head injury. However, he fails to allege

19   sufficient facts or present evidence demonstrating that he is likely to succeed on the merits of his

20   claim that any of the named defendants acted with deliberate indifference, or even negligently, in

21   prescribing him antipsychotic medications in May 2019 or thereafter, or in treating his 2019 head

22   injury. Plaintiff fails to allege adequate facts or present evidence to demonstrate that the cited

23   psychiatric medications were what caused him to self-harm or led to his head injury in May or

1    June 2019. He also does not indicate whether he has continued to be prescribed these

2    medications since 2019. Furthermore, his motions for preliminary injunctive relief do not appear

3    to request any specific change in his medications or mental health treatment, only that he

4    believes the treatment he has received has been inadequate and has in some unexplained way

5    "exacerbated" symptoms he believes are caused by his 2019 head injury.

6        With respect to his 2019 head injury, plaintiff alleges in his complaint that he has an

7    untreated fracture as well as T.B.I. induced hallucinations and that his motor skills and executive

8    functioning have been affected. Dkt. 4. Plaintiff alleges defendant Smith was deliberately

9    indifferent in failing to send him for an MRI and CT with contrast. *Id.* The Court notes that

10   plaintiff's request for an MRI and CT with contrast is the only specific request for preliminary

11   injunctive relief the Court can decipher from his motions for preliminary injunction. However,

12   plaintiff presents nothing to demonstrate at this stage that an MRI or CT with contrast is

13   medically appropriate or that defendant acted with deliberately indifference, or even negligently,

14   in failing to send him for these tests. Plaintiff's own submissions include what appears to be a

15   copy of the medical report addressing the results of the CT scan he was given on June 23, 2019,

16   to assess his head injury. Dkt. 25-1, at 22-29. That report appears to indicate "[n]o evidence of

17   skull fracture or intracranial bleed. Patient neurologically intact. […] Reassuring neuro exam[.]"

18   *Id.*, at 27.

19       On this record plaintiff fails to demonstrate that he is likely to succeed on the merits of

20   his claims, that irreparable injury is likely in the absence of injunctive relief, that the balance of

21   the equities tips in his favor, or that issuance of an injunction is in the public interest. The Court

22   notes that due to the lack of evidence demonstrating inadequate care at this point, the public

23

REPORT AND RECOMMENDATION - 7

interest and equities favor leaving decisions regarding plaintiff's medical and psychiatric care to his providers.

As such, plaintiff fails to establish he is entitled to a preliminary injunction associated with his claims and his motions (Dkts. 8, 9, 14) should be DENIED.

**CONCLUSION**

Plaintiff fails to demonstrate his entitlement to the preliminary injunctive relief requested. Accordingly, plaintiff's motions for preliminary injunction (Dkts. 8, 9, 14) should be DENIED. A proposed order accompanies this Report and Recommendation.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 25, 2021.** The Clerk should note the matter for **May 28, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **8 pages**. The failure to timely object may affect the right to appeal.

DATED this 4th day of May, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8